IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATALIE PRESTON, | * |
| Plaintiff, | * |
| v. | *  Civil Action No. ADC-23-01147 |
| BALTIMORE POLICE DEPARTMENT, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Defendant Baltimore Police Department ("BPD") moves this Court to dismiss Plaintiff Natalie Preston's Amended Complaint. ECF No. 22.¹ After considering Defendant's Motion and the responses thereto (ECF Nos. 25, 26, 30) the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2023). For the reasons stated herein, Defendant's Motion is GRANTED.

**Factual and Procedural Background**

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the challenged complaint. *See Williams v. Kincaid*, 45 F.4th 759, 765-66 (4th Cir. 2022). Plaintiff is an African-American woman who was hired by the BPD as a police officer on July 6, 2000. ECF No. 22 at ¶¶ 5, 7. Plaintiff was promoted several times: In April 2010,

---

¹ On May 2, 2023, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 3. All parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No. 18.

she was promoted to the rank of Sergeant; in September 2015, she was promoted to Lieutenant; in September 2017, she was promoted to Acting Captain; in August 2018, she was promoted to Acting Major; and in January 2019, she was promoted to Major. *Id.* at ¶ 8. Throughout Plaintiff's career at BPD, she was a member of the Vanguard Justice Society, "an organization that advocates on behalf of minority police officers against discrimination, including racial discrimination, in the workplace." *Id.* at ¶ 9. In June 2020, Plaintiff was elected the President of the Vanguard Justice Society. *Id.*

On July 13, 2020, in her capacity as President of the Vanguard Justice Society, Plaintiff attended a meeting with Deputy Commissioner Michael Sullivan, Captain Lisa Roberts, Captain Derek Loeffler, and Lieutenant Fontaine Smallwood to advocate on behalf of an African-American officer who was denied a promotion on two separate occasions. *Id* at ¶ 10. Plaintiff believed that the officer in question was "more qualified than his Caucasian fellow officers who were promoted." *Id.* Plaintiff also served as a witness in support of the same officer's discrimination complaint that was filed with the Maryland Commission on Civil Rights. *Id.*

On August 4, 2020, an African-American officer under Plaintiff's command was suspended and served with criminal charges. *Id.* at ¶ 11. In her capacity as Vanguard Justice Society President, Plaintiff expressed to Major Stephanie Lansey that, "for safety reasons and per BPD's best practices, the BPD detective who filed the charges [against the officer in question] should not have inserted the officer's home address on the charging documents." *Id.* Plaintiff also shared a concern with Major Lansey that "around the same

2

time [that the African-American officer was charged], a Caucasian officer was criminally charged, and his home address did not appear on any of his charging documents[.]" *Id.*

On August 10, 2020, Plaintiff learned that she was the subject of a BPD Internal Affairs Division investigation. *Id.* at ¶ 12. Plaintiff stated that she wanted to be represented by an attorney; however, two days later, Plaintiff's request for counsel was denied. *Id.* On August 13, Plaintiff was ordered to give a statement regarding the allegation that she had improperly authorized an officer to take a detail day. *Id.* at ¶ 14. On August 25, Plaintiff was administratively charged with "Conduct Unbecoming of a Police Officer/Employee." *Id.* at ¶ 15. The facts were sustained on the charge against her. *Id.*

On September 25, 2020, again in her capacity as Vanguard Justice Society President, Plaintiff accompanied an African-American officer to a meeting with Deputy Commissioner Danny Murphy. *Id.* at ¶ 16. Plaintiff and the officer expressed that the officer "was unfairly being overlooked for promotion, despite being qualified, while other less qualified Caucasian officers were promoted for the same positions." *Id.* During that meeting, "Plaintiff also expressed her opposition to the Internal Affairs Division's practice of imposing harsher sanctions against African-American officers than Caucasian officers for the same or similar employment violations." *Id.* at ¶ 17. On October 28, 2020, Plaintiff was demoted in rank from Major to Lieutenant. *Id.* at ¶ 18. Plaintiff contends that she was not given any reason for the demotion, even upon request, and that the demotion resulted in a $15,000 decrease in her salary. *Id.* On November 24, 2020, BPD suspended Plaintiff and recommended her termination. *Id.* at ¶ 19. Plaintiff was notified that "she was

3

suspended for giving an unauthorized detail day to an officer, failing to manage resources, and for…misrepresenting facts." *Id.* at ¶ 20.

On December 9, 2020, Plaintiff filed a Complaint with the Equal Employment Opportunity Commission ("EEOC") alleging claims of racial discrimination and retaliation against BPD. *Id.* at ¶ 23. On March 2, 2022, Plaintiff was acquitted of all charges by the trial board, and she subsequently requested that she be reinstated to her position. *Id.* at ¶¶ 24–25. She was informed that "the Major would not sign off on her paperwork for reinstatement because [Plaintiff] had an open EEOC Complaint." *Id.* at ¶ 25. Plaintiff contends that, at the time, she was "aware of other officers who were reinstated and/or promoted with open EEOC pending investigations." *Id.*

On March 3, 2022, Plaintiff sought to file a complaint against the officers who "made false statements pertaining to the charges that were filed against her[,] which were disproved at trial[.]" *Id.* Lieutenant Mahoney told Plaintiff that "she could file the Complaint herself in the departmental database." *Id.* at 26. Plaintiff, however, "stated that it was her supervisor's responsibility to enter the Complaint on her behalf since he attended her trial board hearing and witnessed the false statements that were made." *Id.* Plaintiff contends that her request that her supervisor file a complaint on her behalf was ignored. *Id.*

On March 11, Plaintiff was reinstated to full duty at the rank of Lieutenant and was issued the return of her equipment. *Id.* at ¶ 27. On May 11, Plaintiff was informed that she was being transferred from her assignment at the Pawn Shop Unit/Juvenile Booking to the Southwest District Patrol Unit. *Id.* at ¶ 28. On August 5, 2022, the Deputy Mayor for Public Safety approached Plaintiff and asked her to serve as his Police Data Liaison. *Id.* at ¶ 29.

Plaintiff expressed interest in the position. *Id.* The following week, however, "Plaintiff was called to the Deputy Commissioner's Office and was informed that despite the fact that she was asked by the Deputy Mayor to serve as his liaison, there would be a posting for the position, and she would have to apply and interview for it." *Id.* at ¶ 30.

On February 3, 2023, the EEOC issued a "Notice of Right to Sue" letter, and on April 28, 2023, Plaintiff filed this lawsuit against BPD and Michael Harrison in his official capacity as the Commissioner of the Baltimore Police Department. ECF Nos. 1, 22-2. On August 9, Plaintiff filed an Amended Complaint against only BPD, alleging race discrimination (Count I) and retaliation (Count II), both in violation of Title VII. ECF No. 22. BPD filed the present Motion to Dismiss on September 5, 2023. ECF No. 25. Plaintiff responded in opposition on September 18, 2023, and BPD replied on October 10, 2023. ECF Nos. 26, 30.

## DISCUSSION

**Standard of Review**

A Rule 12(b)(6) motion "tests the sufficiency of the claims pled in a complaint." *Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). Its purpose is not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Rather, "[a] Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law 'to state a claim upon which relief can be granted.'"

5

*Gaines v. Baltimore Police Dep't*, No. ELH-21-1211, 2023 WL 2185779, at *7 (D.Md. 2023) (quoting Fed. R. Civ. P. 12(b)(6)).

Upon reviewing a motion to dismiss, the Court accepts "all well-pleaded allegations as true and construe[s] the facts in the light most favorable to the plaintiffs." *In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 302 (4th Cir. 2019) (citations omitted). However, it does not accept as true legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when Plaintiff "pleads factual content that allows the court to draw the reasonable inference that [Defendant] is liable for the misconduct alleged." *Id.* An inference of a "mere possibility of misconduct" is not sufficient to support a plausible claim. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. As for Title VII claims at the motion to dismiss stage, "the question is whether the plaintiff alleges facts that plausibly state a violation of Title VII above a speculative level." *Gaines*, 2023 WL 2185779, at *8 (cleaned up and internal quotations removed) (quoting *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020). A plaintiff must state a plausible claim for relief, but "need not establish a prima facie case of discrimination." *Gaines*, 2023 WL 2185779, at *8 (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 122 (2002).

**Analysis**

Title VII

Title VII prohibits, inter alia, an employer from engaging in "status-based discrimination," *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013), "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII further prohibits retaliation in response to unlawful workplace discrimination. 42 U.S.C. § 2000e-3(a). "Title VII also reaches the creation or perpetuation of a discriminatory work environment." *Vance v. Ball State Univ.*, 570 U.S. 421, 426 (2013). Defendant argues that (1) Plaintiff has failed to state a claim for discrimination because she has failed to sufficiently allege satisfactory job performance and that she received differential treatment from similarly situated employees outside her protected class; and (2) that Plaintiff has similarly failed to state a claim for retaliation because she has not sufficiently alleged a causal link between a legitimate protected activity and an adverse employment action. ECF No. 25-2. The Court addresses each argument below.

Discrimination in Violation of Title VII (Count I)

BPD asserts that Plaintiff's Amended Complaint must be dismissed because she has failed to allege facts supporting the claim that she was suspended and demoted based on her race. ECF No. 25-2. "Although a plaintiff need not assert a prima facie claim of discrimination under Title VII in order to survive a Rule 12(b)(6) motion, reference to the elements of a Title VII claim is helpful to gauge the sufficiency of the allegations." *Gaines*,

7

2023 WL 2185779, at *11. Plaintiffs may generally prove Title VII discrimination claims "either through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015), abrogated on other grounds, *Laird v. Fairfax Cty.*, 978 F.3d 887, 893 n.6 (4th Cir. 2020). To establish a prima facie claim of discrimination under *McDonnell Douglas*, the plaintiff "must demonstrate (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Angelini v. Baltimore Police Dep't*, 464 F. Supp. 3d 756, 778 (D. Md. 2020) (quoting *Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015), abrogated on other grounds, *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 615 (4th Cir. 2020), cert. denied, 141 S. Ct. 1376 (2021)) (internal quotation marks omitted). Once a plaintiff has demonstrated a prima facie case, "the burden shifts to Defendant to rebut by providing 'legitimate nonretaliatory reasons for the adverse action.'" *Frank v. England*, 313 F.Supp.2d 532, 538 (D.Md. 2004). The burden then shifts back to the employee to establish that the employer's proffered reasons are pretextual. *Id.*

As an African-American woman, Plaintiff is a member of a protected class, and she suffered an adverse employment action when she was demoted from Major to Lieutenant on October 28, 2020. Plaintiff also argues that she suffered an adverse employment action when she was suspended on November 24, 2020, pending the resolution of the IAD case against her. *See* ECF No. 22 at ¶ 32. However, Plaintiff is incorrect in her assertion that the suspension constituted an adverse employment action for the purposes of Title VII. "To

qualify, the action must 'constitute[ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Franovich v. Hanson*, No. DKC 22-1008, 2023 WL 5297673, at *7 (D.Md. Aug. 17, 2023) (quoting *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011)). Plaintiff's IAD charge, and the suspension that stemmed from it, is not an adverse employment action because Plaintiff did not suffer a change in employment status—the disciplinary proceedings ultimately resulted in her favor, and she was reinstated to full duty at the rank of Lieutenant. *See Settle v. Baltimore Cty.*, 34 F.Supp. 2d 969, 992 (D. Md. 1999) ("[P]laintiffs have to show not only that the disciplinary proceedings sprang from a discriminatory or retaliatory motive, but that the nature and character of the investigation, which did not lead to the imposition of discipline, actually adversely affected some term or condition of employment, i.e., inflicted an 'employment injury.' Specifically, if a disciplinary investigation is reasonably rooted in articulable facts justifying such an investigation, neither inconvenience nor emotional anxiety on the employee's part will constitute an 'employment injury' sufficient to render the investigation itself an adverse employment action independently cognizable under Title VII.").

Regardless, Plaintiff's prima facie case fails because she is unable to sufficiently demonstrate that her job performance was satisfactory and that she received differential treatment from similarly situated employees outside of her protected class. As for the satisfactory job performance element, "a plaintiff need not 'show that he was a perfect or model employee. Rather, a plaintiff must only show that he was qualified for the job and

9

that he was meeting his employer's legitimate expectations.'" *Gaines*, 2023 WL 2185779, at *11 (quoting *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019). When considering whether an employee is meeting the employer's legitimate performance expectations, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (internal quotations omitted) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).

In support of her claim that she was meeting her employer's legitimate expectations, Plaintiff asserts that she was promoted six times since beginning her career with BPD in 2000. ECF No. 22 at ¶ 8. Plaintiff's Complaint is otherwise devoid of any other facts alleging that she was fulfilling BPD's legitimate expectations, and the threadbare facts that she has alleged are insufficient. Plaintiff has merely alleged a history of internal promotion—she has not provided the Court with any facts demonstrating that she was meeting BPD's performance expectations *at the time* she was suspended and demoted. *See* ECF No. 22.

Plaintiff also fails to sufficiently plead any facts suggesting that similarly situated individuals outside of her protected class received differential treatment. *See id.* At the motion to dismiss stage, a plaintiff must "identify the proposed comparator and establish a plausible basis for believing the employee was actually similarly situated." *Gaines*, 2023 WL 2185779, at *11 (cleaned up and internal quotations omitted) (citing *Asi v. Info. Mgmt. Group, Inc.*, GLR-18-3161, 2019 WL 4392537, at *6 (D.Md. Sept. 13, 2019)); *see also Sawyers v. United Parcel Service*, 946 F.Supp.2d 432, n. 10 (D.Md. May 16, 2013) ("[A]

10

a plaintiff who bases her allegations entirely upon a comparison to an employee from a non-protected class must demonstrate that the comparator was 'similarly situated' in all relevant respects." (citations omitted and emphasis added)).

Here, Plaintiff asserts that she "was told that she was suspended for giving an unauthorized detail day to an officer, failing to manage resources, and for [] mispresenting facts." *Id.* at ¶ 20. In comparison, she further asserts that:

> A similarly-situated BPD Major, who is a Caucasian male, was treated differently and more favorably than Plaintiff. Plaintiff and the Caucasian Major both served in the Northeast and Northern District at the same time as Majors. Moreover, the Caucasian Major had the same supervisors as Plaintiff - Lt. Col. Kevin A. Jones, Sr. and Chief of Patrol Richard Worley, who all worked under Commissioner Michael Harrison's administration in year 2020. The Caucasian Major was accused of improperly granting vacation leave to an officer who was incarcerated, thus allowing the officer to receive a check while in jail (an allegation of granting improper leave to an officer - similar employment violation to which Plaintiff was accused). Yet, the BPD decided not to pursue IAD charges against the Major, the investigation was closed on the basis that there was a "communication misunderstanding". The Caucasian Major was ultimately allowed to retire in good standing as a Major, he was not demoted.

ECF No. 22 at ¶ 21 (emphasis added).

Plaintiff has failed to sufficiently allege that the identified Caucasian Major was "similarly situated in all relevant respects." *Sawyers*, 946 F.Supp.2d at n. 10. Plaintiff argues, inter alia, that she and the comparator were accused of similar offenses— granting an authorized detail day and improperly granting vacation leave to an incarcerated officer, respectively—but that only she faced disciplinary consequences. This argument is unpersuasive. At the outset, Plaintiff was charged with offenses beyond just granting an improper detail day. By her own admission, Plaintiff was told that her suspension

additionally stemmed from two other offenses—failing to properly manage resources and for misrepresenting facts. ECF No. 22 at ¶ 20. Plaintiff has not alleged that the Caucasian Major also faced additional charges of improper conduct. Further, the allegations do not suggest that the Caucasian Major was suspended with pay pending the outcome of an IAD investigation. Thus, given the apparent differences in the alleged misconduct and surrounding circumstances, there is no basis to find that the Caucasian Major is a valid comparator. *See id.* at ¶ 21.

> Plaintiff also provides the Court with two other comparators:
>
> In addition, a Caucasian male Lieutenant who was found guilty of violating the Maryland CJIS code by looking up a former Deputy Commissioner's information was suspended and given an administrative job in the "Communications" division. Typically, when Caucasian officers are suspended, they are given an administrative job where they can learn a new skill (i.e. in Communications (dispatch) or the Watch Center (cameras and radio operations). In contrast, when African-American officers are suspended they are routinely sent to Juvenile Booking (jail). Additionally, the Caucasian male Lt. Colonel who was also involved in the matter was just given a letter of reprimand, then promoted twice, and ultimately retired to work for PERF (Police Executive Research Forum).

*Id.* at ¶ 22.

There is no basis to find that either of these individuals are valid comparators. *See Gaines*, 2023 WL 2185779, at *13 (finding that individuals who allegedly "had similar experience as Sergeants" and "were reinstated as Sergeants within a similar time frame" were plausibly valid comparators.) As for the Caucasian Lieutenant, Plaintiff has not alleged that "violating the Maryland CJIS code by looking up a former Deputy Commissioner's information" is comparable to the charges that Plaintiff faced. *See id.* Plaintiff also provides scant details regarding what the Lieutenant Colonel was alleged to

12

have done. *Id. See McIntosh v. Wormuth*, No. 8:20-cv-00714-PX, 2021 WL 3288369, at *4 (D.Md. Aug. 2, 2021); *see also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination.") aff'd, 553 U.S. 442 (2008).

Finally, Plaintiff also argues that BPD delayed her reinstatement by a week because of her open EEOC Complaint alleging racial discrimination and retaliation. ECF No. 22 at ¶¶ 23–25. Plaintiff states that "[a]t that time, [she] was aware of other officers who were reinstated and/or promoted with open EEOC pending investigations." ECF No. 22 at ¶ 25. This comparison is vague and completely devoid of any details that would allow the Court to determine if the aforementioned officers are valid comparators. *See Humphries*, 474 F.3d at 405.

Plaintiff has failed to plausibly allege facts to support that she was satisfactorily performing her job and that she received differential treatment from similarly situated employees outside of her protected class. Plaintiff has therefore failed to state a claim of race-based discrimination in violation of Title VII. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020). Defendant's Motion to Dismiss is GRANTED as to Count I of the Complaint.

Retaliation in Violation of Title VII (Count II)

To bring a claim of retaliation under Title VII, plaintiffs may prove violations through direct and indirect evidence of retaliatory animus, or, as with discrimination claims, through the burden-shifting framework of [*McDonnell Douglas*]." *Foster v. Univ. Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015); *see also Rodgers v. Eagle Alliance*, 586 F.Supp.3d 398, 445 (D.Md. 2022) ("The Fourth Circuit has made clear that the *McDonell Douglas* proof scheme applies to a retaliation claim."). Under the burden-shifting framework, a plaintiff must first offer a prima facie case of retaliation. *Walton v. Harker*, 33 F.4th 165, 177 (4th Cir. 2022). To establish a prima facie case of retaliation, a plaintiff must show: "(i) 'that [she] engaged in protected activity,' (ii) 'that [her employer] took an adverse action against [her],' and (iii) 'that a causal relationship existed between the protected activity and the adverse employment activity.'" *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 654-55 (4th Cir. 2021) (quoting *Foster*, 787 F.3d at 250 (alterations in *Foster*)).

As previously discussed, Plaintiff suffered an adverse employment action when she was demoted from Major to Lieutenant. To satisfy the "protected activity" element of the prima facie case, a plaintiff must make a showing that she either (1) engaged in opposing a practice prohibited under Title VII or (2) made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII. *See Pitter v. Cmty Imaging Partners, Inc.*, 735 F.Supp.2d 379, 395 (D.Md. 2010).

Here, Plaintiff argues that she engaged in protected activity when she attended two meetings with command staff members as part of her role as President of the Vanguard

Justice Society. ECF No. 22 at ¶¶ 10, 16–17. Plaintiff contends that during the July 2020 meeting, she "advocate[d] on behalf of an African-American officer who was denied a promotion on two (2) separate occasions despite being more qualified than his Caucasian fellow officers who were promoted." *Id.* at ¶ 10. And in September 2020, Plaintiff attended a meeting with the Deputy Commissioner to "complain that [an] African-American officer was unfairly being overlooked for promotion, despite being qualified, while other less qualified Caucasian officers were promoted for the same positions." *Id.* at ¶ 16.

Plaintiff has arguably alleged that she engaged in protected activity through her participation in these meetings. The Supreme Court has defined "oppose" in the Title VII context as "'to resist or antagonize...; to contend against; to confront; resist; withstand,... to be hostile or adverse to, as in opinion.'" *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416–17 (4th Cir. 2015) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009)). Therefore, "the threshold for oppositional conduct is not onerous." *Id.* at 417. "'[W]hen an employee communicates to her employer a belief that the employer has engaged in...a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity.'" *Id.* (quoting *Crawford*, 555 U.S. at 276, internal quotation marks omitted) (citing 2 EEOC Compliance Manual §§ 8–II–B(1), (2), p. 614:0003 (Mar. 2003)). By alleging that she communicated to BPD that it discriminated against African-American officers, Plaintiff has sufficiently pled that she engaged in opposing a practice prohibited under Title VII.

However, Plaintiff has not alleged that a relationship existed between the protected activity and the adverse employment action. "To establish causation under Title VII, the plaintiff bears the burden of establishing that the alleged retaliation 'would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Rodgers*, 586 F.Supp.3d at 445 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). A plaintiff may demonstrate that a protected activity caused an adverse action by proceeding "through two routes." *Id.* at 447 (quoting *Roberts v. Glenn Industrial Group, Inc.*, 998 F.3d 111, 117 (4th Cir. 2021). First, "a plaintiff may establish the existence of facts that suggest that the adverse action occurred because of the protected activity." *Id.* (cleaned up and internal quotations omitted). Second, "a plaintiff may demonstrate that the adverse act bears sufficient temporal proximity to the protected activity." *Id.* (internal quotations omitted). "[A] lengthy time lapse between the defendant's becoming aware of the protected activity and the alleged adverse …action often negates any inference that a causal connection exists between the two." *Id.* (internal quotations omitted) (quoting *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005)); *see also Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 790 (D.Md. 2013).

Arguably, there is sufficient temporal proximity between the protected activity of September 25, 2020 as well as prior Vanguard activities of 2020 and the adverse action of demotion on October 28, 2020. However, Plaintiff's Complaint still fails since Plaintiff has not alleged that Commissioner Harrison, the decision maker, had knowledge of her protected activities when Plaintiff was demoted. *See Angelini*, 464 F. Supp.3d at 791–92

("If an employer…never realized that its employee engaged in protected conduct, it stands to reason that the employer did not act out of a desire to retaliate for conduct of which the employer was not aware.") (quoting *Villa v. CavaMezze Grill*, LLC, 858 F.3d 896, 901 (4th Cir. 2017). Rather than drawing a reasonable inference, this Court would have to speculate to fill in the gaps as to the reason for the adverse action. *Bing v. Brivo Systems LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

As noted previously, Commissioner Harrison is also African-American, which at the least weakens Plaintiff's claims.

As the Court in *Bing* stated:

> Our *McCleary-Evans* decision is particularly instructive here. In that case an African-American female job applicant sued a state agency, alleging she was not hired for two positions because of her race and gender. *McCleary-Evans*, 780 F.3d at 583. She alleged "[d]uring the course of her interview, and based upon the history of hires within [that agency], ... both [supervisors] predetermined to select for both positions a White male or female candidate." *Id.* "But she alleged no factual basis for what happened 'during the course of her interview' to support the alleged conclusion." *Id.* at 586. While "she repeatedly alleged that the Highway Administration did not select her because of the relevant decisionmakers' bias against African American women," we found that claim to only amount to a "naked" allegation and "no more than conclusions[.]" *Id.* at 585 (*quoting Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937 (*quoting Twombly*, 550 U.S. at 555, 557, 127 S.Ct. 1955)) (internal quotation marks omitted). We held that these allegations were too conclusory. *Id.* Specifically, we noted that "[o]nly speculation can fill the gaps in her complaint—speculation as to why two 'non-Black candidates' were selected to fill the positions instead of her." *Id.* at 586. The mere fact that a certain action is potentially consistent with discrimination does not alone support a reasonable inference that the action was motivated by bias. *Id.* Thus, we concluded the plaintiff failed to allege "facts sufficient to claim that the reason it failed to hire her was because of her race or sex." *Id.* at 585.

*Bing v. Brivo Systems LLC*, 959 F.3d at 618.

Because Plaintiff has failed to plausibly allege a racially based causal relationship between the protected activity and the adverse employment action, by failing to provide facts that the decision maker, a member of her protected class, had knowledge of those activities, Plaintiff has failed to plead a prima facie case of retaliation. Defendant's Motion to Dismiss is GRANTED as to Count II of the Complaint.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendant's Motion (ECF No. 25) is GRANTED. A separate Order will follow.

Date: 4 December 2023

A. David Copperthite
United States Magistrate Judge